People of Puerto Rico, Plaintiff and Appellee, *v.* Enrique Báez, Defendant and Appellant.

No. 3965.  Argued December 8, 1931.—Decided November 22, 1932.

R. *Rivera Zayas* and E. *García* for appellant.   E. *Díaz Viera* and
José R. *Gelpí* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Defendant, after indictment in the District Court of Maya-
güez, and after an order for a change of venue made at the
instance of the district attorney, was tried and convicted in the
District Court of Aguadilla.   The record has come up in two
sections, one relating to the proceeding in the District Court
of Mayagüez and the other to the subsequent proceeding in
the District Court of Aguadilla.   These two records came up
separately at different times, one certified by the judge of the
District Court of Mayagüez and the other by the judge of the
District Court of Aguadilla.   They were docketed as separate
cases in this Court, and separate briefs were filed by the par-
ties.   The record now under consideration is from the District
Court of Mayagüez, and the brief for appellant is an attack
on the order directing a change of venue.

Appellant cites *People* v. *Collazo*, 33 P.R.R. 48, in support
of the theory that the motion for a change of venue in the
instant case and the affidavits thereto attached did not state
facts sufficient to justify a change of venue.   This Court, in
the *Collazo* case, was stating the reasons why a refusal of
the district court to order a change of venue should be
affirmed.   It does not follow that the granting of a change of
venue in the circumstances of that case would have been
reversed for the same reasons.   The doctrine of the *Collazo*
case is that the ruling of a district court on an application
for a change of venue, whether adverse or favorable to the
applicant, will not be disturbed on appeal in the absence of
a palpable abuse of discretion.

The pivotal facts in the case at bar are essentially different from those in the *Collazo* case. In the motion now before us, the district attorney stated that public opinion at the time of the motion was strongly prejudiced in favor of defendant and against the prosecution, as shown by the affidavits attached; that the public had evinced its prejudice in the court house by an expression of its feelings on a former occasion when defendant was acquitted of another offense; that at the former trial the testimony of certain character witnesses, men of great prestige and influence throughout the district, had impressed not only the jury but the general public; that defendant himself was a man of great influence and prestige throughout the district by reason of his long services as an employee in the Registry of Property of San Germán and as secretary of the District Court of Mayagüez; that his character and reputation had never before been attacked, and it was said in public places that he was the innocent victim of other persons unnamed; that defendant was related to families of high social, political and financial standing in the district, such as the Garcías of Sabana Grande, the Nazarios of San Germán, and the Cabanillas family of Mayagüez, and that this would affect the mind of the jury; that thirty-six members of the general panel had already been drawn and had served as grand or petit jurors in the investigation and trial of other charges against defendant, or had been challenged and excused; that the grand jury had discarded five out of seven charges against defendant, wherein the evidence consisted almost entirely of court documents and checks bearing the signature of defendant; and that for all of these reasons a fair and impartial jury could not be obtained in the district.

On cross-examination, the district attorney testified that when one of the two indictments returned by the grand jury seemed to have been lost, the grand jury took one of the five cases already discarded by it and amended the indorsement thereon, by striking the "not", so as to read "a true bill"

and that later, when the lost indictment was found, the amended indorsement on the bill originally indorsed as "not a true bill" was again amended. His testimony was uncontradicted by that of any other witness.

The district attorney introduced the documentary evidence submitted to the grand jury in the five cases wherein that body had refused to indict the defendant. This evidence was not included in the transcript on appeal. The district attorney also testified as to the substance and effect of the testimony before the grand jury in connection with the documentary evidence in these five cases, as to the sufficiency of the evidence in each of these cases and as to the fact that it was uncontradicted. His testimony as to these matters is likewise uncontradicted by that of any other witness.

The cross-examination of the district attorney covered a number of other matters mentioned in the motion for a change of venue. Later, witnesses for defendant testified as to some of these matters. A rehearsal of this testimony as well as any discussion thereof may be omitted here in the interest of brevity.

Rafael Igaravídez, a District Chief of Police, set forth in his affidavit that at the time of defendant's arrest he had heard in different public places in the city of Mayagüez, among different groups, much laudatory comment to the effect that defendant was incapable of committing any crime and was the victim of some enemy; that in these discussions public opinion was unanimously inclined in favor of defendant; that when defendant was acquitted of a certain charge, on leaving the court accompanied by a large number of persons there was an expression of popular rejoicing; and that affiant believed it would be impossible for the People of Puerto Rico to obtain a fair and impartial trial in the district of Mayagüez because of defendant's great popularity and influence. On cross-examination Igaravídez testified that the persons whom he had heard discussing the Báez case were qualified to act as jurors; that his experience had led him

to believe in the difficulty of obtaining an impartial verdict when the public talks in that manner about a defendant; that by public opinion witness meant the opinion voiced by different groups in the street and in the clubs and as expressed on the occasion of defendant's acquittal and at the time of the grand jury investigation; that witness saw many people congratulate defendant on his acquittal; that the public rejoicing was easy to see; and that defendant left the court accompanied by a great number of people.

Felipe Yunqué, a merchant from Sabana Grande was a juror. He stated in his affidavit that Enrique Báez had served as secretary of the district court for more than eight years and as an employee of the registry of property in San Germán for about 12 years; that he was related to the Garcías of Sabana Grande, to the Nazarios of San Germán and to the Cabanillas family in Mayagüez; that all of these families had great influence in the district; that the said Báez was prominent in politics, in social life and among the masons of the district; that he was very well connected with the most influential persons and with the jurors of the district; that there was and had always been in the district a very strong public sentiment in favor of Enrique Báez; that he was regarded as incapable of having committed the offenses with which he was charged; that many jurors were impressed in defendant's favor; and that affiant firmly believed that it would be impossible to obtain a fair and impartial jury and trial within the district. At the hearing this witness was asked whether he would find defendant guilty if he were called as a juror in a case against Báez and if conclusive evidence of defendant's guilt were presented, and if defendant's guilt were established beyond all doubt. The answer was, ''I would acquit him. I do not believe that Enrique Báez is guilty.'' The rest of the examination along this line was as follows:

"Q.—Do you not believe him guilty?
"A.—No, sir.

"Q.—And if it were shown that he is guilty, would you acquit him?

"A.—I would hardly accuse him.

"Q.—But my question is, if it were shown that he is guilty, would you acquit him?

"A.—I would acquit him.

"Q.—And if you gave oath before the court that you would convict him if he were guilty or that you would acquit him if he were innocent, would you violate your oath?

"A.—Before taking the oath I would state to the Court that I would not act in this case as a juror.

"Q.—Are you sure that the remaining jurors of the district feel as you do?

"A.—I can assure you that there are many among them incapable of accusing this gentleman.

"Q.—Do you know Enrique Báez very well?

"A.—Yes, sir.

"Q.—Are you a friend of his?

"A.—A friend, no, but I have known him for twenty years.

"Q.—And what makes you think that way, with such philanthropic honesty?

"A.—That he is an honest man.

"Q.—Why did you come to Mayagüez today?

"A.—I was acting as juror and there was a case on the calendar for November 30th, and then I told the District Attorney that I wanted to be excused from the jury in that case because I did not want to act during the trial, because I knew Enrique Báez and I did not believe him guilty of the offense with which he was charged."

This witness also testified that he had been acquainted with local political conditions for many years and that Enrique Báez had always served his party well; and that he was one of the best politicians and "one of the best friends that we could have had here in the district."

There were sixteen of these affidavits. Most, if not all, of the affiants appeared at the hearing and were examined by defendant. The foregoing outline will suffice to give some idea as to the nature and contents of the affidavits, and as to the character and scope of the investigation conducted by the district court. The motion and affidavits furnished an ade-

quate basis for the subsequent proceeding, and together with the evidence adduced at the hearing, were sufficient justification for the order changing the place of trial.

The motion for a change of venue with affidavits attached was filed November 28, 1927, and set for a hearing on the day following. Defendant obtained an extension of time within which to answer the motion and present counter-affidavits. On December 6, defendant obtained another extension of fifteen days for the same purpose. On December 13, a third extension was granted. It expired December 31. On that date, defendant moved to dismiss the application for a change of venue. This motion was set for a hearing on January 5, 1928, and then denied. At the same time the motion for a change of venue was set for a hearing on January 9. On the day of the hearing defendant moved that the secretary be ordered to draw the names of at least one hundred jurors from the box containing the names of the regular trial jurors and that the jurors whose names were so drawn should be summoned to appear on a day to be fixed by the court for examination in order to determine whether a fair and impartial jury could be obtained. The motion was denied. This is assigned as error. Appellant cites 27 R.C.L. 822. The language of the text is that ". . . . in some jurisdictions where the ground for the change is local prejudice, the court may postpone the hearing of the motion until it can be ascertained by an examination of a sufficient number of jurors whether a fair or impartial trial can be obtained." We find no abuse of discretion in the overruling of defendant's motion.

When the district attorney offered in evidence the stenographic records in the cases submitted to the grand jury in which no indictments were returned, defendant requested that these records be exhibited in order that he might examine them. No ruling appears to have been made upon this request. In the transcript of the record defendant's request is followed by a stenographer's note which reads:

"The investigations to which the District Attorney refers which were submitted to the Grand Jury of this district and returned as not a true bill are Nos. 6578, 6579 and 6580. The People of Puerto Rico against Enrique Báez for a crime committed against the Public Treasury of Puerto Rico, and 6577 and 6581 against the same defendant for embezzlement, filed under those numbers in the criminal docket of this court. One of the aforementioned cases in which the original transcript of evidence was written, is stricken out now by order of the Court in deciding an amendment presented by counsel for the appellant with the consent of the District Attorney."

None of the three records referred to is to be found in the certified transcript of the evidence made a part of the judgment roll. Beyond the stenographer's note there is nothing to show that the stenographic record in any one of the cases submitted was ever admitted in evidence. On the contrary, at a later stage of the proceeding, while one of the grand jurors was testifying as a witness for defendant, counsel for defendant, in setting forth the ground of an exception, stated that the district attorney had not introduced in evidence the stenographic records of the grand jury investigation which up to that time had not been delivered by the stenographer.

When other documentary evidence which had been submitted to the grand jury was offered by the district attorney at the hearing in the instant case, defendant objected on the ground that it was foreign to the question before the court, and requested permission to interrogate the district attorney but did not demand an opportunity to examine the documents so offered before they were admitted. The court admitted the documents and granted defendant's request.

The third assignment is that the district court erred in admitting "this evidence" without giving defendant an opportunity to examine it. As to the stenographic record of the proceedings before the grand jury, it was never produced in court nor admitted in evidence. The court did not err in admitting the other documentary evidence without first giving defendant an opportunity to examine the same because no

objection was ever made on that ground and defendant never requested the privilege of examination.

Incidentally in the motion for a change of venue the district attorney had stated that a large number of prominent people had attended the previous trial of Enrique Báez on another charge of which he was acquitted. Counsel for defendant while examining the district attorney asked him to name the prominent people referred to. He named a number of them. Counsel for defendant then moved for an order directing the marshal to summon as witnesses for the defendant four of the persons named. This motion was denied. Whether the investigation should have been extended to include the examination of persons specified as among those present at a previous trial, without any indication as to the purpose of the proposed examination was a matter within the sound discretion of the district judge. No abuse of that discretion is shown. As a matter of fact one of the four persons subsequently appeared and was examined by defendant. The examination was confined to other matters. The witness was not even asked whether he had attended the previous trial.

Defendant produced as witnesses, Pedro Acevedo and Fernando Oms Sulsona, two of the grand jurors who had presented two indictments against Báez and had refused to indict him in five other cases. Both testified that the grand jury, when it convened to investigate the seven charges against Báez, had not agreed to present two indictments only. When counsel for defendant asked Acevedo whether anything had occurred between the district attorney and the grand jury during the course of the investigation, the district attorney objected and the judge sustained the objection. Defendant excepted on the ground that the district attorney had not introduced in evidence the stenographic record of the investigations which the stenographer had not delivered. Counsel for defendant asked Oms whether the district attorney had attempted to obstruct the investigation at any time or in any

manner. The judge again sustained an objection and defendant excepted on the ground that the district attorney in his motion for a change of venue had offered as proof the testimony taken during the investigation by the grand jury. The attorney for defendant then announced that he had brought all the members of the grand jury to testify as to whether there had been any agreement to dismiss five of the cases against Báez and to "dismiss" (*sic*) two, but as this evidence was cumulative it was not necessary to offer it. He added that he had brought them to testify also as to something that had occurred between the district attorney and the grand jury during the course of the investigation. The district judge said that he had excluded evidence as to the matter last mentioned and would exclude any other of the same sort if the members of the grand jury were questioned. To this ruling defendant took an exception.

The record does not disclose the nature of the incident between the district attorney and the grand jury, unless we assume that the grand juror, Oms, would have answered that the district attorney had attempted to obstruct the investigation. It does not disclose the purpose of defendant in attempting to show what had occurred between the district attorney and the grand jury. If defendant had made his purpose clear to the district judge (for example if he had made it clear that he wished to show why the grand jury had failed to indict defendant in five cases), if the district judge had then refused to permit further examination of the grand juror and if the question had been presented to this court for direct review by certiorari or otherwise before the trial of the case possibly the order for a change of venue would have been reversed. See *People* v. (*Torres*) *Gómez*, 33 P.R.R. 179, and 28 C. J. 812, section 113 *et seq.* Before that order could have been reversed, however, it would have been necessary to consider that the action of the grand jury was but a single circumstance, and to determine whether the other

facts were alone suifficient to sustain the finding as to the probable impossibility of obtaining an impartial petit jury. The error, if any, in disposing of the question as presented in Mayagüez is not enough to justify a reversal of the judgment obtained in another district.

Another contention is that the District Court of Mayagüez was without jurisdiction to order a transfer of the cause. The theory is that the application for a change of venue was premature because it was made before arraignment or plea. Appellant cites 27 R.C.L. 825 and *State* v. *Reid*, 28 Am. Dec. 572. The doctrine, as summed up by Ruling Case Law, is that ''Ordinarily, where a change of venue is sought on the ground that a fair trial is impossible on account of local prejudice, a cause cannot be removed for trial before it is at issue, since the object of removal is to have an impartial jury and before an issue of fact it cannot be known that the trial will be by a jury.''

Assuming that the doctrine is applicable in the absence of any statutory provision and that the requirement is jurisdictional, (as to which see 16 C. J. 210, section 316), the question is one which may be waived by a defendant and comes too late when raised for the first time on appeal.

The remaining assignment goes to the question of passion, prejudice, and abuse of discretion in the weighing of the evidence. We find no indication of passion or prejudice and no such manifest error in the weighing of the evidence adduced at the hearing on the motion for a change of venue as to require a reversal.

Neither the order directing a change of venue nor the judgment of conviction should be reversed for any of the reasons set forth in the brief now before us. Whether the judgment appealed from should be affirmed or reversed on other grounds is a question that will be discussed and decided in another opinion.

Mr. Justice Córdova Dávila took no part in the decision of this case.